REACH Air Medical Services, LLC, et al.,

      Plaintiffs,

v.

Kaiser Foundation Health Plan Inc., et al.,

      Defendants.

Case No. 4:22-cv-03979

**DEFENDANT KAISER FOUNDATION HEALTH PLAN INC.'S MOTION TO DISMISS
PLAINTIFFS' COMPLAINT AND STRIKE PLAINTIFFS'
CLAIM FOR ATTORNEY'S FEES**

# TABLE OF CONTENTS

I.    STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING ............................................................................. ii

II.   ISSUES TO BE RULED UPON BY THE COURT ...................... 1

    A.   Failure to State a Claim. .............................................. 1

    B.   Motion to Strike ........................................................... 1

III.  SUMMARY OF ARGUMENT ....................................................... 1

IV.  BACKGROUND ............................................................................. 3

    A.   The Parties. .................................................................. 3

    B.   The NSA and IDR Dispute Process. ........................... 3

          1.   Background of the NSA. ..................................... 3

          2.   The IDR arbitration process. .............................. 4

          3.   The IDR process is designed for *efficiency* and *finality*. ........... 6

    C.   Plaintiffs' Complaint. .................................................. 7

V.   LEGAL STANDARD ..................................................................... 8

VI.  ARGUMENT .................................................................................. 9

    A.   The complaint is procedurally defective. .................... 9

    B.   Plaintiffs fail to allege corruption, fraud, or undue means ................ 11

          1.   Rule 9(b)'s heightened pleading standard applies. .................. 11

          2.   Plaintiffs' allegations fail to satisfy Rule 9(b). ......................... 12

          3.   Plaintiffs' claims also fail under Rule 8. ................................. 15

    C.   Plaintiffs' unsupported assertion that MET is "partial" is an insufficient basis for vacatur. ...................... 15

    D.   MET's alleged application of an improper presumption is not a proper basis for vacatur. ................... 17

    E.   Allegations of pre-NSA market data do not justify vacatur ............. 18

    F.   Plaintiffs have no basis to seek attorney's fees. ........ 19

VII. CONCLUSION .............................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009)......................................................................................15

*AT&T Mobility LLC v. Concepcion*
    563 U.S. 333 (2011).......................................................................................6

*Bell Atl. Corp. v. Twombly*
    550 U.S. 544 (2007)......................................................................................15

*Brabham v. A.G. Edwards & Sons, Inc.*
    376 F.3d 377 (5th Cir. 2004) .........................................................................3

*Citigroup Global Mkts. Inc. v. Bacon*
    562 F.3d 349 (5th Cir. 2009) .......................................................................18

*Cooper v. WestEnd Capital Mgmt., LLC*
    832 F.3d 534 (5th Cir. 2016) .......................................................................16

*Downer v. Siegel*
    489 F.3d 623 (5th Cir. 2007) .........................................................................8

*In re Franklin Bank Corp. Sec. Litig.*
    782 F. Supp. 2d 364 (S.D. Tex. 2011)..........................................................11

*Garber v. Sir Speedy, Inc.*
    1996 WL 734947 (N.D. Tex. Dec. 11, 1996).................................................11

*Hall St. Assocs., LLC v. Mattel, Inc.*
    552 U.S. 576 (2008)...........................................................................3, 6, 8, 13

*Haller v. U.S. Dep't of Health & Hum. Servs.*
    2022 WL 3228262 (E.D.N.Y. Aug. 10, 2022) ...............................................6

*Halliburton Energy Servs., Inc. v. NL Indus.*
    618 F. Supp. 2d 614 (S.D. Tex. 2009)............................................................8

*Hart v. Internet Wire, Inc.*
    50 Fed. App'x 464 (2d Cir. 2002) ................................................................13

*Herrmann Holdings Ltd. v. Lucent Techs., Inc.*
302 F.3d 552 (5th Cir. 2002) ...............................................................12

*Householder Group v. Caughran*
354 Fed. Appx. 848 (5th Cir. 2009).....................................................16

*Johnson v. Drake*
2017 WL 1173275 (N.D. Tex. Mar. 30, 2017)....................................11

*Kruse v. Sands Bros. & Co., Ltd.*
226 F. Supp. 2d 484 (S.D.N.Y. 2002) ..........................................10, 11

*Marx v. Gen. Revenue Corp.*
568 U.S. 371 (2013).............................................................................19

*Med-Trans Corp. v. Capital Health Plan et al.*
3:22-cv-1077 (M.D. Fla.).......................................................................5

*In re Med/Waste, Inc.*
2000 WL 34241099 (S.D. Fla. Aug. 30, 2000) ...................................13

*Nordahl Dev. Corp. v. Salomon Smith Barney*
309 F. Supp. 2d 1257 (D. Or. 2004) ......................................................9

*O.R. Secs., Inc. v. Prof'l Planning Assocs., Inc.*
857 F.2d 742 (11th Cir. 1988) ......................................................10, 11

*Positive Software Solutions, Inc. v. New Century Mortg. Corp.*
476 F.3d 278 (5th Cir. 2007) ...............................................................16

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*
388 U.S. 395 (1967)...............................................................................6

*Rain CII Carbon, LLC v. ConocoPhillips Co.*
674 F.3d 469 (5th Cir. 2012) ...............................................................17

*Samsung Elecs. Co. v. Texas Instruments*
1996 WL 343330 (N.D. Tex. 1996) .....................................................14

*SanMartino v. Toll Bros., Inc.*
2010 WL 11693556 (D.R.I. Mar. 16, 2010)........................................11

Page(s)

*Shushany v. Allwaste, Inc.*
992 F.2d 517 (5th Cir. 1993) ........................................................................11, 12

*Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*
559 U.S. 662 (2010) ..............................................................................................8

*Sullivan v. Stroop*
496 U.S. 478 (1990) ..............................................................................................9

*Texas Med. Ass'n v. U.S. Dep't of Health & Hum. Servs.*
587 F. Supp. 3d 528 (E.D. Tex. 2022) ..................................................................9

*Trans Chem. Ltd. v. China Nat'l Mach. Import & Export Corp.*
978 F. Supp. 266 (S.D. Tex. 1997) ................................................................12, 14

*U.S. ex rel. Digital Healthcare, Inc. v. Affiliated Computer Servs.*
778 F. Supp. 2d 37 (D.D.C. 2011) .......................................................................12

*U.S. ex rel. Williams v. Bell Helicopter Textron, Inc.*
417 F.3d 450 (5th Cir. 2005) ...............................................................................12

*U.S. v. Basye*
410 U.S. 441 (1973) ..............................................................................................3

*Vantage Deepwater Co. v. Petrobras Am., Inc.*
966 F.3d 361 (5th Cir. 2020) ..............................................................17, 18, 19

*Walker v. Ameriprise Fin. Servs.*
787 Fed. Appx. 211 (5th Cir. 2019) .......................................................................9

*Weber v. Merrill Lynch Pierce Fenner & Smith, Inc.*
455 F. Supp. 2d 545 (N.D. Tex. 2006) ................................................................16

*Wolcott v. Sebelius*
635 F.3d 757 (5th Cir. 2011) ................................................................................5

Statutes

9 U.S.C. § 6 ...........................................................................................................9

9 U.S.C. § 10 .........................................................................................8, 9, 11, 16

9 U.S.C. § 12 .......................................................................................................10

**Page(s)**

42 U.S.C. § 300gg-111 ................................................................2, 6, 8, 14

42 U.S.C. § 300gg-112 .............................................................4, 5, 13, 19

42 U.S.C. § 300gg-135 .......................................................................4

Other Authorities

5 C.F.R. § 890.114 ......................................................................7, 14, 18

86 Fed. Reg. 36,872 (July 13, 2021)......................................................4, 19

86 Fed. Reg. 55,980 (Oct. 7, 2021).....................................................5, 6, 7

87 Fed. Reg. 52,618 (Aug. 26, 2022)............................................7, 14, 17, 18

H.R. REP. NO. 116-615, pt. I (Dec. 2, 2020)............................................4, 6, 19

Fed. R. Civ. P. 8 ...........................................................................15

Fed. R. Civ. P. 9 ....................................................................2, 11, 12, 14, 15

Fed. R. Civ. P. 12 .......................................................................1, 13

# I. STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING

Plaintiffs REACH Air Medical Services, LLC, et al. (collectively, "Plaintiffs") filed their complaint on November 16, 2022. (ECF No. 1). The Court conducted the initial conference in this matter on January 17, 2023. (ECF No. 21).

# II. ISSUES TO BE RULED UPON BY THE COURT

Defendant Kaiser Foundation Health Plan, Inc. ("Kaiser") moves to dismiss Plaintiffs' complaint for failure to state a claim upon which relief can be granted. Kaiser also moves to strike Plaintiffs' claim for attorney's fees on the ground that Plaintiffs have no basis for such a claim.

## A. Failure to State a Claim.

A district court's dismissal for failure to state a claim under Rule 12(b)(6) is a finding of law subject to de novo review. *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011).

## B. Motion to Strike.

A decision to grant a motion to strike is reviewed for abuse of discretion. *Cambridge Toxicology Grp., Inc. v. Exnicios*, 495 F.3d 169, 178 (5th Cir. 2007).

# III. SUMMARY OF ARGUMENT

Plaintiffs' complaint should be dismissed with prejudice because it is an improper attempt to topple the independent arbitration process implemented under the No Surprises Act ("NSA") and its core purpose of providing an efficient means for dispute resolution. Congress enacted the NSA to end "surprise billing"—a practice where providers sent "surprise" bills to health plan members to extract above-market payments from their health plans. The NSA established an independent dispute resolution ("IDR") process to resolve payment disputes between out-of-network providers and health plans in an efficient, streamlined, and low-cost manner. To maximize this goal of efficiency, the NSA expressly incorporates the highly limited standards of

judicial review under the Federal Arbitration Act ("FAA"), which provides only four narrow exceptions for reviewing an arbitration decision. 42 U.S.C. § 300gg-111(c)(5)(E)(i). None applies here.

Plaintiffs and their affiliates (represented by the same plaintiff's firm) filed this and other cases against various health plans and IDR arbitrators challenging unfavorable arbitration decisions. In *every one* of these cases, Plaintiffs and their affiliates assert identical theories. Each lawsuit repeats the same copy-and-paste legal challenge criticizing the substance of the NSA, accuses the health plan of securing the arbitration decision "through undue means and misrepresentations" and "bad faith," without factual support, and characterizes the IDR arbitrator as "partial," again without facts to demonstrate its supposed bias. In addition, each lawsuit attempts to litigate the health plan's calculation of its median contracted rates ("qualifying payment amount" or "QPA")—which an IDR arbitrator is not even permitted to decide in the arbitration, and is instead overseen by the Centers for Medicare & Medicaid Services ("CMS"). In all these cases, Plaintiffs seek vacatur of the arbitration award based on the alleged misconduct of the health plan and the IDR arbitrator. There is no basis in law or fact for vacatur.

As an initial matter, the complaint should be dismissed because it is procedurally defective. The FAA clearly requires a party who seeks to challenge an arbitration award to file a ***motion to vacate*** rather than a complaint—but Plaintiffs ignored this express requirement and instead filed a complaint wholly unsupported by evidence. On the allegations, the complaint is equally defective: Plaintiffs fail to show or sufficiently allege corruption, fraud, or undue means. When a plaintiff's claims sound in fraud, the complaint must satisfy the heightened pleading requirements of Rule 9(b)—describing ***with particularity*** the circumstances of the fraud. Plaintiffs' complaint is devoid of allegations meeting this exacting standard. Moreover, Plaintiffs fail to demonstrate that any of

the FAA's four narrow exceptions for vacatur of an arbitration award applies warranting court review. Finally, none of Plaintiffs' attempts to assail the arbitrator or its decision are a valid basis to vacate the IDR's arbitration award. A court may only disturb an arbitration award on "very narrow grounds"—which Plaintiffs have not demonstrated. *Brabham v. A.G. Edwards & Sons, Inc.*, 376 F.3d 377, 380 (5th Cir. 2004). The court's review of the award itself is "exceedingly deferential." *Id.*

Finality is arbitration's essential virtue. If unhappy parties could take "full-bore legal and evidentiary appeals" of arbitration awards, arbitration would become "merely a prelude to a more cumbersome and time-consuming judicial review process." *Hall St. Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576, 588 (2008). Plaintiffs cannot overturn IDR arbitration decisions by parroting ominous legal conclusions with only cursory facts as support. This Court should reject Plaintiffs' attempt to rewrite statute.

## IV.    BACKGROUND

### A.    The Parties.

Plaintiffs are affiliated corporations that provide air ambulance services throughout the country. Compl. ¶¶ 9–11; ECF No. 15. Kaiser is a non-profit public health plan that provides comprehensive medical, surgical, and hospital services to its members. Compl. ¶ 12; *U.S. v. Basye*, 410 U.S. 441, 443 (1973). MET is a medical appeals company that also serves as an IDR arbitrator in disputes under the NSA. Compl. ¶¶ 13, 27.

### B.    The NSA and IDR Dispute Process.

#### 1.    Background of the NSA.

For services where patients cannot choose the provider in advance—like emergency air ambulance services—providers lack the incentive to enter negotiated contracts to join health plans'

networks. H.R. REP. NO. 116-615, pt. I, at 53 (Dec. 2, 2020). By remaining "out-of-network," these providers can charge "highly inflated payment rates." *Id.* And before the NSA, if health plans did not pay the inflated charges in full, the provider could bill the patient directly for any remaining amounts not paid by the health plan through what is called a "surprise" or "balance" bill. *Id.* at 51; Requirements Related to Surprise Billing; Part I, 86 Fed. Reg. 36,872, 36,874 (July 13, 2021). The threat of surprise bills enabled providers to coerce carriers to pay above-market rates for services, or risk members being dragged into billing disputes at tremendous individual expense. *Id.* at 36,874, 36,924 & n.130.

Congress enacted the NSA to address this "market failure" enabling providers to extract extortionate rates. H.R. REP. NO. 116-615, pt. I, at 53. The NSA prohibits providers from attempting to collect billed charges not paid by the health plan from patients. 42 U.S.C. § 300gg-135. Any remaining disputes between health plans and providers must be resolved via the IDR arbitration process created by Congress, pursuant to 42 U.S.C. § 300gg-112.

2.    The IDR arbitration process.

Under the NSA, the health plan must first either pay or deny the claim within 30 calendar days of bill transmittal. 42 U.S.C. § 300gg-112(a)(3)(A-B). Upon payment, the provider has 30 days to initiate the "open negotiation period" to informally resolve the claim. *Id.* § (b)(1)(A). If negotiations fail, the provider may initiate IDR arbitration. *Id.* § (b)(1)(B). If arbitration is initiated, the parties each submit a proposed offer for payment of the services at issue. *Id.* § (b)(5)(B)(i)(I). The IDR arbitrator—who as Plaintiffs admit is often randomly appointed—then selects between the offers to determine the payment amount (i.e., "baseball-style" arbitration). *Id.* § (b)(5)(C)(i)(I-II); Compl. ¶ 55. Neither party has a right to discover any of the confidential materials submitted by the opposing party in support of its offer. *Id.* ¶ 26.

The IDR arbitrator is required to consider the health plan's "qualifying payment amount"—generally the median of the health plan's contracted rates—when selecting between offers. 42 U.S.C. § 300gg-112(b)(5)(C)(i)(I). Though the IDR arbitrator must consider this information, a health plan need not reimburse at its QPA rate, or offer an amount equal to its QPA in the IDR arbitration. *Id.* Thus, a health plan may choose to pay a provider at, above, or below its QPA rate, or ignore it entirely—a fact that even Plaintiffs acknowledge. Compl. ¶ 24. However, in choosing the appropriate out-of-network rate, "it is not the role of the certified IDR entity to determine whether QPA has been calculated by the plan or issuer correctly[.]" Requirements Related to Surprise Billing; Part II, 86 Fed. Reg. 55,980, 55,996 (Oct. 7, 2021).

Taking the allegations in Plaintiffs' affiliate lawsuits as true, plans reimburse providers well below their QPA rate. *Med-Trans Corp. v. Capital Health Plan et al.*, 3:22-cv-1077 (M.D. Fla.) (Dkt. No. 1, ¶ 4) (alleging the health plan paid **59%** of its QPA). Comparatively, Plaintiffs allege that the IDR arbitrators concluded that Kaiser paid an average of **253.7%** of its QPA for air ambulance pickup (codes A0430/A0431), and an average of **178.8%** of its QPA for mileage (codes A0435/A0436). *See* Request for Judicial Notice ("RJN"), Exhs. A–F; *Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (recognizing that a court may take judicial notice of certain facts without converting a motion to dismiss into a motion for summary judgment). Indeed, Plaintiffs allege that Kaiser was also the only health plan to pay more than 100% of its QPA rate.[1]

---

[1] Compl. ¶¶ 18, 20, 22 *and* RJN, Exhs. A–F (arbitration decisions noting that Kaiser paid an average of **253.7%** of its QPA for air ambulance pickup (codes A0430/A0431), and an average of **178.8%** of its QPA for mileage (codes A0435/A0436)); *cf. Capital Health* (Dkt. No. 1, ¶ 4) (alleging Capital paid **59%** of its QPA rate); *Blue Cross* (Dkt. No. 1, ¶ 4) (alleging Blue Cross paid **100%** of its QPA rate); *Aetna* (Dkt. No. 1, ¶ 4) (alleging Aetna paid **100%** of its QPA rate).

### 3. The IDR process is designed for *efficiency* and *finality*.

Congress specifically designed the IDR process to provide for an "efficien[t]" and streamlined means of dispute resolution at a "minimal cost[.]" 42 U.S.C. § 300gg-111(c)(3)(A); *id.* § 300gg-111(c)(4)(E); *see also* H.R. REP. NO. 116-615, at 48, 58 (IDR process is structured "to reduce costs for patients and prevent inflationary effects on health care costs"); Requirements Related to Surprise Billing; Part II, 86 Fed. Reg. 55,980, 55,996, 56,001 (Oct. 7, 2021) (emphasizing the importance of "efficiency," "predictability," and "streamlining" in the IDR process); *Haller v. U.S. Dep't of Health & Hum. Servs.*, 2022 WL 3228262, at *7 (E.D.N.Y. Aug. 10, 2022) (noting that Congress devised the IDR process as an "expert and inexpensive method" for resolving disputes).

To advance this goal, payment amounts are determined on the papers on a condensed timeline, rather than through a lengthy and expensive trial subject to the federal rules. *See* 42 U.S.C. § 300gg-111(c)(5); 42 U.S.C. § 300gg-112(b)(5). For the same reasons, Congress expressly incorporated the FAA's narrow standards of judicial review into the NSA. 42 U.S.C. § 300gg-111(c)(5)(E)(i)(II). The purpose of the FAA is to "encourage[] . . . efficient and speedy" dispute resolution. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 345 (2011). Arbitration is intended to be "speedy and not subject to delay and obstruction." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967). The FAA's limitation on judicial review is central to arbitration's "essential virtue of resolving disputes straightaway"—except in the most extreme circumstances. *Hall St.*, 552 U.S. at 588.

Post-implementation of the NSA, efficiency has become more critical than ever. Although the promulgating Departments[2] initially estimated that at least 50 IDR arbitrators would seek certification, less than 13 IDR arbitrators are currently accepting new disputes. Requirements Related to Surprise Billing; Part II, 86 Fed. Reg. 55,980, 56,052 (Oct. 7, 2021); *see* Compl. ¶ 2. Meanwhile, the number of IDR arbitrations continues to rise—for example, 71,915 disputes were filed in the third quarter of 2022 alone. RJN, Exh. G.

### C. Plaintiffs' Complaint.

Dissatisfied with their losses in IDR arbitrations, Plaintiffs and their affiliate entities filed several virtually identical lawsuits against health plans and IDR arbitrators challenging IDR decisions in the health plan's favor. In every one of these lawsuits, Plaintiffs rely on the same baseless copy-and-paste allegations: (1) accusing the health plan of securing the arbitration decision "through undue means and misrepresentations" and "bad faith" without factual support;[3] (2) characterizing the IDR arbitrator as "partial[]" without facts to demonstrate its supposed bias;[4] and (3) attempting to litigate the health plan's QPA calculation,[5] which an IDR arbitrator is not even permitted to decide in an IDR dispute. Requirements Related to Surprise Billing, 87 Fed. Reg. 52,618, 52,627 n.31 (Aug. 26, 2022); 5 C.F.R. § 890.114.

---

[2] Department of Health and Human Services ("HHS"), the Department of Labor ("DOL"), and the Department of the Treasury, collectively, the "Departments."

[3] Compl. ¶ 51; *cf. Capital Health* (Dkt. No. 1, ¶ 36); *Blue Cross* (Dkt. No. 1, ¶ 45); *Aetna* (Dkt. No. 1, ¶ 35).

[4] Compl. ¶¶ 52, 57; *cf. Capital Health* (Dkt. No. 1, ¶ 37); *Blue Cross* (Dkt. No. 1, ¶ 46); *Aetna* (Dkt. No. 1, ¶ 36).

[5] *Supra* n.3.

## V.    <u>LEGAL STANDARD</u>

IDR arbitration determinations "***shall not*** be subject to judicial review" unless one of the FAA's four narrow exceptions applies. 42 U.S.C. § 300gg-111(c)(5)(E)(i) (emphasis added). These four limited bases are:

(1) where the award was procured by corruption, fraud, or undue means;[6]

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a)(1–4). The FAA imposes a "heavy" presumption in favor of confirming arbitration awards. *Downer v. Siegel*, 489 F.3d 623, 626 (5th Cir. 2007). Indeed, "judicial review of arbitration decisions is among the narrowest known to the law." *Halliburton Energy Servs., Inc. v. NL Indus.*, 618 F. Supp. 2d 614, 634 (S.D. Tex. 2009); *Downer*, 489 F.3d at 626 ( "A district court's review of an arbitration award is extraordinarily narrow."). An arbitrator's error—even a "serious" one—does not warrant vacatur under the FAA. *Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010); *see also Hall St.*, 552 U.S. at 586 (2008) (recognizing that the specific, narrow bases set forth in the FAA are the "exclusive" means for vacatur). As the parties seeking to vacate the IDR award, Plaintiffs carry the heavy burden to establish the existence of a specific statutory ground for vacatur. *See Trans Chem. Ltd. v. China Nat'l Mach. Import & Export*

---

[6] It appears this factor is the only basis for reviewability that does not exclusively relate to an arbitrator.

*Corp.*, 978 F. Supp. 266, 303 (S.D. Tex. 1997), *aff'd and adopted*, 161 F.3d 314 (5th Cir. 1998) ("A party moving to vacate an arbitration award has the burden of proof."); *see also Walker v. Ameriprise Fin. Servs.*, 787 Fed. Appx. 211, 213 (5th Cir. 2019) (recognizing that the party seeking vacatur "must clear a high hurdle").

In their complaint, Plaintiffs appear to rely on all four of the bases for vacatur under FAA § 10(a). Compl. ¶ 50. Each of these statutory bases (along with other non-statutory grounds) fails, and the complaint should be dismissed with prejudice.

## VI.    ARGUMENT

### A.    The complaint is procedurally defective.

As an initial matter, the complaint should be dismissed because it is procedurally defective. Judicial review of an IDR decision is *only* available "under the circumstances described in the [FAA]." *Texas Med. Ass'n v. U.S. Dep't of Health & Hum. Servs.*, 587 F. Supp. 3d 528, 535 (E.D. Tex. 2022). The FAA clearly requires that a party who seeks to challenge an arbitration award to file a *motion to vacate* rather than a complaint. 9 U.S.C. § 6 ("[a]ny application to the court hereunder shall be made and heard in the manner provided by law *for the making and hearing of motions* . . . .") (emphasis added). Where a statute is "clear and unambiguous . . . that is the end of the matter, for the court  . . . must give effect to the unambiguously expressed intent of Congress." *Sullivan v. Stroop*, 496 U.S. 478, 482 (1990). Moreover, the *motion* must be supported by evidence—not just allegations—demonstrating one of the four bases for vacatur under the statute. 9 U.S.C. § 10(a)(1–4); *see also Nordahl Dev. Corp. v. Salomon Smith Barney*, 309 F. Supp. 2d 1257, 1268 (D. Or. 2004) (denying plaintiff's motion to vacate as lacking evidence justifying vacatur, and granting leave to amend *only* if plaintiff could, in good faith, "allege facts sufficient to indicate [defendant's] alleged falsehoods").

Here, Plaintiffs' complaint fails to comply with the FAA. Plaintiffs filed a complaint, not a motion to vacate, which is "***required*** in order to preserve the proper function of arbitration . . . ." *Kruse v. Sands Bros. & Co., Ltd.*, 226 F. Supp. 2d 484, 487 (S.D.N.Y. 2002) (emphasis added). Plaintiffs also failed to submit any evidence to support their complaint. Because Plaintiffs failed to comply with the FAA's mandatory requirements, under the plain text of the FAA, the Court must dismiss the complaint. *Id. Kruse* is instructive. There, the Court dismissed a petition to vacate under the FAA because it was filed as a complaint instead of a motion, containing only "conclusory statements . . . devoid of any argument or legal or factual support." *Id.* at 486. The Court further found that petitioner could not file a motion to vacate because the three-month filing period had lapsed, and therefore the petitioner "lost the opportunity to make such a Motion." *Id.* at 487; *see also CareMinders Home Care, Inc. v. Kianka*, 666 Fed. App'x 832, 835 (11th Cir. 2016) (affirming order rejecting arguments seeking vacatur because they were brought in a counterclaim, not a motion). The same is true here. Plaintiffs' failure to timely file a motion, and include any evidence to support their allegations, warrant dismissal with prejudice.[7]

Requiring Plaintiffs to comply with the mandatory requirements of the FAA is not a matter of elevating form over substance. In a case recognized and adopted by courts within the Fifth Circuit, the Eleventh Circuit emphasized that "[t]he manner in which an action to vacate an arbitration award is made is obviously important, for the nature of the proceeding affects the burdens of the various parties [and] the rule of decision to be applied by the district court." *O.R. Sec., Inc. v. Prof'l Planning Assocs., Inc.*, 857 F.2d 742, 745 (11th Cir. 1988) (holding recognized

---

[7] In addition, it is now too late for Plaintiffs to submit evidence in support of a motion to vacate. Under the FAA, the motion to vacate with supporting evidence must be filed within three months after the arbitration award is filed or delivered. 9 U.S.C. § 12. Here, the arbitration award is dated September 12, 2022, which is more than three months ago.

and adopted in *Garber v. Sir Speedy, Inc.*, 1996 WL 734947, at *5 (N.D. Tex. Dec. 11, 1996); *see also Johnson v. Drake*, 2017 WL 1173275, at *3 (N.D. Tex. Mar. 30, 2017) (vacated on other grounds). If brought in the form of a complaint, "the burden of dismissing the complaint would be on the party defending the arbitration award." *O.R. Sec., Inc.*, 857 F.2d at 745. And "[i]f the defending party did not prevail on its motion to dismiss, the proceeding to vacate the arbitration award would develop into full-scale litigation, with the attendant discovery, motions, and perhaps trial." *Id.* The Eleventh Circuit has rejected the approach used by Plaintiffs because it remains the moving party that bears "the burden to set forth sufficient grounds to vacate the arbitration award in his moving papers." *Id.* at 748. This principle is paramount to upholding "basic principles of fairness." *Kruse*, 226 F. Supp. 2d at 487.

**B.      Plaintiffs fail to allege corruption, fraud, or undue means.**

Plaintiffs provide no plausible basis for their conclusory allegation that Kaiser used actionable "misrepresentations and undue means." Compl. ¶ 57.

1.      Rule 9(b)'s heightened pleading standard applies.

Plaintiffs allege—***on information and belief***—that Kaiser secured the IDR arbitration through "undue means." Compl. ¶¶ 1, 49, 51. When a plaintiff's claims sound in fraud, the plaintiff must satisfy the heightened pleading requirements of Rule 9(b), which requires "a party [to] state ***with particularity*** the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b) (emphasis added). *Shushany v. Allwaste, Inc.*, 992 F.2d 517, 521 (5th Cir. 1993); *In re Franklin Bank Corp. Sec. Litig.*, 782 F. Supp. 2d 364, 382 (S.D. Tex. 2011); *SanMartino v. Toll Bros., Inc.*, 2010 WL 11693556, at *6 (D.R.I. Mar. 16, 2010) (applying Rule 9(b)'s heightened standard where plaintiff sought to vacate arbitration award under § 10(a)(1)). Thus, Plaintiffs' allegations of fraud must meet Rule 9(b)'s heightened pleading standard.

Rule 9(b) requires Plaintiffs "to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Herrmann Holdings Ltd. v. Lucent Techs., Inc.*, 302 F.3d 552, 564–65 (5th Cir. 2002). Plaintiffs must provide the "the who, what, when, where, and how" of the allegedly fraudulent conduct. *U.S. ex rel. Williams v. Bell Helicopter Textron, Inc.*, 417 F.3d 450, 453 (5th Cir. 2005). Failure to satisfy Rule 9(b) warrants dismissal. *Shushany,* 992 F.2d at 520.

### 2. Plaintiffs' allegations fail to satisfy Rule 9(b).

Plaintiffs' allegations that Kaiser used "undue means" to prevail in arbitration cannot withstand a motion to dismiss. To vacate an arbitration award based on this theory, a plaintiff must demonstrate behavior that is *"**immoral if not illegal**"* or "otherwise in bad faith," such as "***bribery, undisclosed bias of an arbitrator, or willfully destroying or withholding evidence***." *Trans Chem. Ltd,*978 F. Supp. at 304 (S.D. Tex. 1997) (emphasis added). None of Plaintiffs' allegations comes close to doing so.

First, Plaintiffs allege that Kaiser "secured an award through undue means and misrepresentations of fact" because some of the explanations of payment ("EOPs") Kaiser issued to Plaintiffs for the transport stated that Kaiser allowed a certain amount for Plaintiffs' services, and equated that allowed amount to Kaiser's QPA. Compl. ¶¶ 4, 36–40. This allegation does not amount to "immoral if not illegal" behavior; nor does it demonstrate "bribery, undisclosed bias . . . or willful[] dest[ruction]" of evidence. *See Trans Chem. Ltd.*, 978 F. Supp. at 304. At most, it describes an inadvertent ***pre-IDR*** error; it does not show that Kaiser fabricated a lower QPA in its IDR submission. An inadvertent error does not equate to fraud. *U.S. ex rel. Digital Healthcare, Inc. v. Affiliated Computer Servs.*, 778 F. Supp. 2d 37, 50 (D.D.C. 2011) (recognizing the difference between "inadvertent errors" and fraud); *Hart v. Internet Wire, Inc.*, 50 Fed. App'x 464,

466 (2d Cir. 2002) (affirming dismissal under Rule 12(b)(6) because "[a]t most, plaintiffs have alleged errors and omissions—such as failure to detect or investigate typing errors, inconsistencies of naming, and other supposed signs of the Release's inauthenticity—that suggest carelessness or haste"); *see Hall St.*, 552 U.S. at 586 (2008) (recognizing that "[f]raud" and a mistake of law are not cut from the same cloth"); *see also In re Med/Waste, Inc.*, 2000 WL 34241099, at *8 (S.D. Fla. Aug. 30, 2000) (granting motion to dismiss because allegation of accounting errors—even serious ones—are not sufficient to plead fraud).

Further, Plaintiffs' quibble with Kaiser's above-QPA reimbursement also does nothing to support their case. As Plaintiffs admit, health plans need not reimburse providers—or submit offers—at their QPA rate. *See* Compl. ¶ 24. The QPA is simply a data point that IDR arbitrators consider when determining an appropriate payment amount. 42 U.S.C. § 300gg-112(b)(5)(C)(i)(I). And even if Kaiser's QPA were relevant to this lawsuit, Plaintiffs and their affiliates acknowledge that every one of the other defendant health plans pay less than 100% of their QPA for ambulance transports, *supra* n.1. More importantly, however, it is not even the role of the IDR arbitrator to assess a health plan's reimbursement amount—its only task is to "determin[e] which offer is the payment to be applied . . . ." *See* 42 U.S.C. § 300gg-112(b)(5)(C)(i). Thus, it is legally irrelevant whether Kaiser paid more or less than its QPA when it reimbursed Plaintiffs, and these facts do nothing to aid Plaintiff's case.

Next, without ***any*** facts, Plaintiffs allege that Kaiser's allowed amount and QPA are lower than amounts unnamed payors reimbursed providers for out-of-network services before the NSA. Compl. ¶ 44. This allegation is irrelevant. Because of the highly coercive nature of the pre-2022 air ambulance market, Congress instructed IDR arbitrators to consider a health plan's ***contracted*** rates when selecting between the parties' offers in IDR arbitration, not the ***out-of-network***

payments that providers often strong-armed health plans into paying before the NSA.  42 U.S.C. § 300gg-111(a)(3)(E)(i)(l).   Nothing in the Act requires Kaiser to reimburse providers in accordance with pre-2022 ***out-of-network*** rates.  *Id.*  Finally—and most importantly—it is not the court's role to determine whether Kaiser's reimbursement amount is too low or too high.  A court assesses whether Kaiser's actions were "immoral if not illegal," such as "bribery, undisclosed bias . . . or willful[] dest[ruction]" of evidence.  *Trans Chem. Ltd.*, 978 F. Supp. at 304.  Plaintiffs' dissatisfaction with Kaiser's reimbursement amount does not meet this standard.

Plaintiffs also allege—again, without ***any*** facts—that "certain" unnamed payors "are not properly calculating the QPA."  Compl. ¶ 44.  As a preliminary matter, Plaintiffs rely on speculation, not any facts showing Kaiser's QPA was not calculated properly under federal law.  In any event, as a matter of law, it is not the court's role—nor the role of the IDR arbitrator—to assess whether Kaiser (or any other health plan) properly calculated its QPA.  Requirements Related to Surprise Billing, 87 Fed. Reg. at 52,627 n.31; 5 C.F.R. § 890.114.  Plaintiffs are attempting to litigate an issue that not even an IDR arbitrator can consider, let alone this court.

In sum, Plaintiffs fail to sufficiently plead fraud, undue means, and misrepresentation.  Indeed, Rule 9(b) is intended to discourage the "sue first, ask questions later approach" that Plaintiffs use here.  *See* 27 Fed. Proc., L. Ed. § 62:133 (2022 Update).  Plaintiffs chose not to conduct any pre-suit investigation because they are not actually interested in addressing Kaiser's typographical error in its EOP form—but seek to use that mistake to create extra-statutory exceptions to the Act's narrow bases for appeal.  Further, Rule 9(b) is meant to discourage the "filing of a complaint as a pretext for the discovery of unknown wrongs[.]"  *Samsung Elecs. Co., Ltd. v. Texas Instruments Inc.*, 1996 WL 343330, at *3 (N.D. Tex. 1996).  "[A]pplication of Rule 9(b) is especially appropriate" where a plaintiff could use such discovery to "bolster" its position

in related proceedings—such as IDR arbitrations. *See id.* This Court should prevent Plaintiffs from lodging "general allegation[s] of inequitable conduct . . . as a launching pad for extensive or unwarranted discovery." *Id.* Rule 9(b) forbids Plaintiffs' scheme.

### 3. Plaintiffs' claims also fail under Rule 8.

Plaintiffs' allegations also fail under Rule 8. Rule 8(a) requires "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facial plausibility means enough "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). But when "the well-pleaded facts do not permit the court to infer more than the mere *possibility* of misconduct, the complaint . . . has not shown that the pleader is entitled to relief." *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009) (internal brackets and quotes omitted). Therefore, where the allegations of a complaint have a "more likely explanation[]," they do not "plausibly establish" a plaintiff's theory. *Ashcroft,* 556 U.S. at 681.

Here, there is indeed a far "more likely explanation[]"—that Kaiser paid the claim at an allowable amount *above* its calculated QPA, just as MET acknowledged in its award and as Kaiser is permitted to do under the NSA, but the EOP included a definitional error. *See id.*; *see also* Compl. ¶ 24; *and* RJN, Exhs. A–F. Thus, the complaint does not "plausibly establish" a "scheme" by Kaiser to mislead the arbitrator and prevail in IDR by making up a lower QPA. *Ashcroft*, 556 U.S. at 681; Compl. ¶ 49. Instead, it demonstrates Plaintiffs' opportunistic "sue first, ask questions later" approach that Rule 9(b) is designed to prevent. 27 Fed. Proc., L. Ed. § 62:133 (2022 Update).

### C. Plaintiffs' unsupported assertion that MET is "partial" is an insufficient basis for vacatur.

Plaintiffs' conclusory allegations that MET is "partial[]" do not warrant vacatur under FAA § 10(a)(2). Compl. ¶¶ 52, 57. The FAA presumes that arbitration awards will be confirmed. *See*

*Cooper v. WestEnd Capital Mgmt., LLC*, 832 F.3d 534, 544 (5th Cir. 2016). As a result, the party urging vacatur must allege partiality that is "direct, definite and capable of demonstration rather than remote, uncertain or speculative." *Id.* at 545. The "mere appearance of bias" is insufficient to demonstrate partiality, and is not enough to set aside an arbitration award. *Positive Software Solutions, Inc. v. New Century Mortg. Corp.*, 476 F.3d 278, 282 (5th Cir. 2007). Evident partiality is a "stern standard[,]" requiring "***clearly evident***" bias in the decisionmakers. *Cooper*, 832 F.3d at 545 (emphasis added). Applied in practice, this burden is "onerous"—"the party urging vacatur must produce specific facts from which a reasonable person would ***have*** to conclude that the arbitrator was partial to one party." *Householder Group v. Caughran*, 354 Fed. Appx. 848, 852 (5th Cir. 2009) (quotes omitted) (emphasis added); *see also Weber v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 455 F. Supp. 2d 545, 550 (N.D. Tex. 2006).

Plaintiffs allege that "MET revealed evident partiality, committed prejudicial misbehavior, and exceeded its powers by using an illegal presumption in favor of the purported QPAs." Compl. ¶ 52. This allegation does not justify vacatur. Plaintiffs do not allege a single fact that goes to either basis for vacating an arbitration award. Plaintiffs' lone allegation to demonstrate partiality is that MET applied an improper presumption, but that allegation does not constitute direct, definite, and demonstrable evidence of bias. 9 U.S.C. § 10(a)(2).

Moreover, as discussed below (*see* Sect. VI(D)), even a cursory evaluation of the pertinent regulations and MET's decision demonstrates that MET did not apply any illegal presumption. At most, Plaintiffs' unsupported claim would connote an incorrect legal conclusion, which is not grounds for vacating or modifying the award. *Rain CII Carbon, LLC v. ConocoPhillips Co*., 674 F.3d 469, 472 (5th Cir. 2012) ("An award may not be set aside for a mere mistake of fact or law.").

### D. MET's alleged application of an improper presumption is not a proper basis for vacatur.

Plaintiffs further allege that MET applied an "illegal presumption in favor of the QPAs," apparently as a basis to seek vacatur under FAA § 10(a)(3) or (4). Compl. ¶¶ 57. Plaintiffs assert that because a health plan's QPA is based on contracts with providers that are dissimilar to Plaintiffs, IDR arbitrators should ignore the contracts. *Id.* ¶ 31 n.4.

As an initial matter, Plaintiffs misstate the law relating to use of the QPA in IDR determinations. IDR arbitrators must "select the offer that best represents the value of the item or service under dispute" based on "all permissible information." Requirements Related to Surprise Billing, 87 Fed. Reg. at 52,628. The scope of permissible information specifically includes the QPA. *Id.* ("[I]t will often be the case that the QPA represents an appropriate out-of-network rate, as the QPA is largely informed by similar information to what would be provided as information in support of the additional statutory circumstances."). Plaintiffs' characterization of the QPA as having "little relevance" thus grossly misinterprets the statute. Compl. ¶ 31.

MET's awards show that MET selected the offer best representing the value of the services at issue after considering the parties' evidence, exactly as directed by statute. Indeed, far from rejecting Plaintiffs' evidence MET's decisions specifically indicate that MET "careful[ly] considered . . . the evidence submitted by both parties . . . ." *See* RJN, Exhs. A-F. Significantly, Plaintiffs omitted this language when (partially) quoting the award. Compl. ¶ 48.

Even assuming MET purportedly applied an "illegal presumption" (it did not), the misapplication of the law is still not a valid basis for vacating the arbitration award. The well-settled law of this circuit provides that "[a] court may not review the merits of an [arbitration] award"—even if the arbitrator made an "error of law or fact." *See Vantage Deepwater Co. v. Petrobras Am., Inc.*, 966 F.3d 361, 368, 371 (5th Cir. 2020). Nor is an arbitrator's "***manifest***

disregard of the law" enough to vacate. *Citigroup Global Mkts. Inc. v. Bacon*, 562 F.3d 349, 350 (5th Cir. 2009) (emphasis added). Importantly, it is not the court's role to weigh the evidence before the arbitrator or allow parties to "relitigate" issues in the underlying arbitration. *See Vantage Deepwater Co.,* 966 F.3d at 371. Thus, even if MET had applied an impermissible presumption or applied undue weight to any factor (it did neither), ***at most***, all that occurred was an error of law, which does not warrant vacatur.

Finally, it is not for the courts (or even the arbitrator) to assess the health plan's QPA methodology. Plaintiffs allege on "information and belief," that Kaiser miscalculated its QPA. Compl. ¶ 51. But as the department has made clear in its final rules, it is not arbitrator's role to determine or police QPA calculations:

> To the extent there is a question whether a plan . . . has complied with the July 2021 interim final rules' requirements for calculating the QPA, ***it is the Departments' (or applicable State authorities') responsibility, not the certified IDR [arbitrator],*** to monitor the accuracy of the plan's . . . QPA calculation methodology by conducting an audit . . . .

Requirements Related to Surprise Billing, 87 Fed. Reg. at 52,627 n.31 (emphasis added); 5 C.F.R. § 890.114. It follows that this court, likewise, is not responsible for assessing the accuracy of Kaiser's QPA calculation(s) or underlying methodology. That responsibility rests exclusively with "the Departments" or "applicable State authorities." Requirements Related to Surprise Billing, 87 Fed. Reg. at 52,627 n.31. Plaintiffs' allegations regarding Kaiser's underlying QPA calculation(s) are neither a question for the court to decide nor a basis vacate the IDR award.

### E. Allegations of pre-NSA market data do not justify vacatur.

Plaintiffs complain that Kaiser's allowed amount and QPA are below the out-of-network market average rate for 2019 air ambulance trips, and that Kaiser intentionally reduced reimbursement amounts after the NSA prevented air ambulance companies from balance billing patients. Compl. ¶¶ 44–45. Plaintiffs allege that this shows Kaiser pays "far below reasonable

market rates." *Id.* ¶¶ 41. Even if accepted as true (it is not), payment below pre-NSA market rates is not a permissible factor in IDR determinations, let alone a basis for vacatur.

The NSA specifically prohibits the IDR entity from considering the amount the provider billed before the NSA went into effect. 42 U.S.C. § 300gg-112(b)(5)(C)(iii). Indeed, the very purpose of the NSA is to prevent health plans from overpaying providers and to shield plan members from egregious surprise bills. H.R. REP. NO. 116-615, pt. I, at 55-56 (Dec. 2, 2020). Congress expressly recognized that air ambulance providers used surprise bills to extract higher payment, and that health plans succumbed to the pressure of surprise billings to protect their members. *Id.* at 55-56, 58; Requirements Related to Surprise Billing; Part I, 86 Fed. Reg. 36,872, 36,874 (July 13, 2021). Thus, it should be no surprise that without the threat of surprise billing, Kaiser no longer voluntarily elects to reimburse providers at a rate that significantly exceeds the median of its in-network rates. And regardless, even an IDR arbitrator does not consider amounts paid by the health plan—but rather the health plan's QPA (and other statutory factors as appropriate)—when selecting between the parties' offers. 42 U.S.C. § 300gg-112(b)(5)(C)(i)(I–II). Plaintiffs' contentions about what they believe constitutes "market rate" bear only on the determination of the appropriate payment rate, which is not for this court to decide. *See Vantage Deepwater Co.,* 966 F.3d at 371.

### F. Plaintiffs have no basis to seek attorney's fees.

Kaiser requests that this Court strike Plaintiffs' demand for attorney's fees. Plaintiffs have identified no law or contract that would provide for an award of attorney's fees, because none exists. *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 382 (2013) (recognizing the principle that each party must pay their "own attorney's fees, win or lose, unless a statute or contract provides otherwise"). Plaintiffs are not entitled to the relief they seek.

## VII.   <u>CONCLUSION</u>

Plaintiffs should not be permitted to disrupt the dispute resolution process created by Congress, nor relitigate the merits of a fee dispute that has already been decided in arbitration. Kaiser asks the court to dismiss Plaintiffs' complaint with prejudice, deny the relief sought, and strike Plaintiffs' request for an award of attorney's fees.

Dated: January 31, 2023

/s/ Barclay R. Nicholson
Barclay R. Nicholson
Bar No. 24013239
SDTX No. 26373
Erica C. Gibbons
Bar No. 24109922
SDTX No. 3348462
700 Louisiana Street, Suite 2750
Houston, Texas 77002
Telephone: 713.431.7100
Fax: 713.431.7101
BNicholson@sheppardmullin.com
EGibbons@sheppardmullin.com

-and-

Moe Keshavarzi (pro hac vice)
California Bar No. 223759
mkeshavarzi@sheppardmullin.com
John F. Burns (pro hac vice)
California Bar No. 290523
jburns@sheppardmullin.com
Megan McKisson (pro hac vice)
California Bar. No. 336003
mmckisson@sheppardmullin.com
SHEPPARD MULLIN RICHER &
HAMPTON LLP
333 South Hope Street, 43rd Floor
Los Angeles, CA 90071-1422
Telephone:     213-620-1780

*Attorneys for Defendant*
*KAISER FOUNDATION HEALTH*
*PLAN, INC.*

## **CERTIFICATE OF CONFERENCE**

Kaiser certifies that before filing the motion, it notified the opposing party of the issues asserted in the motion, and the parties tried but could not agree that the pleading deficiency could be cured in any part by a permissible amendment offered by the pleading party. Specifically, counsel for Kaiser (Megan McKisson) spoke with Adam Schramek, counsel for REACH, on January 11, 2023.

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 31st day of January 2023, a true and correct copy of the above and foregoing document has been served on all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system. All others will be served via electronic mail.

*/s/ Erica C. Gibbons*

Erica C. Gibbons